Good morning, Justices. Will you please report? I am Mary Lynn Bilberg and I am honored to be before you representing Mr. Bell. At sentencing, the trial court declared, Mr. Bell is an adult now. The defendant is a monster. He's had a horrible, horrible existence. And if you want to study how to create a monster, you could look at Michael Bell's upbringing. The cold-blooded character of this criminal act is beyond the court's comprehension. And when you factor in that he was 14 years old when you did this, it is incomprehensible that anyone could be this barbaric and despicable. It is this court's intention that this defendant never, never get out of prison. This defendant is incapable of being rehabilitated. This defendant is not someone who should ever be allowed into society. And therefore, I'm going to sentence the defendant to the longest term possible under the law. That was the sentencing number one. Years later, when it came back before the trial court, after reversal from the court of appeal, in which the court of appeal invited the trial court to look at the fact that Mr. Bell was 14 years old, to look at the fact that Mr. Bell had an IQ of 14. I'm sorry. 49. 49. I'm sorry. The trial court said, I don't understand why they want me to look at that. I don't agree with the opinion. And again, sentenced Mr. Bell at every sentencing juncture, and there's quite a few in this case, to the highest term, the maximum term of law. But those same statements weren't made. The statements that you articulated before, those statements weren't made at the second sentencing hearing. No, but she did say, she did say that, I'm looking, that I am going to follow the same pattern that I followed before. She referred to the prior sentencing and said that I am going to. Well, there's no doubt about what she said. The question is the judgment appealed from doesn't have all this rhetoric in it. It just has the judgment. But again, the trial court stated that she was not going to give consideration. She definitely didn't want to ever see him on the street again. Right. She made that very clear. Right. And she said that the, was not going to give, I'm referring to excerpts of record, page 31, D2, where the court said, I'm going, I agree the court states the same sentiment that there's no reason to take any special considerations, age and mental capacity. There's discussion on, again, I refer you to excerpts of record, page 31. And then goes in, again, to sentence at every single sentencing opportunity to choose consecutive or maximum term. My question in this case is whether or not this is a de facto LWOP such that it comes under the rule of Graham v. Florida. But once I have that question in my head, I ask whether or not the state court should be given the first opportunity to apply Graham because Graham was decided only after the state court has dealt with it. In other words, I'm interested in whether or not we should exhaust. I understand that when the case comes into the federal district court the first time around, the state's answer is, and I'm on page two, page one of the answers, page one? Yes, page, in terms of numbered pages. Right. The state quote admits that the petition is not barred by a failure to exhaust state remedies. I read that not as a waiver of exhaustion. I read that as a statement that as federal law then stood, all exhaustion that was required had been done. But there may be a principle, it's a little bit ambiguous in the Supreme Court's case law, but as I read the Supreme Court's case law, if there's been a fundamental change of federal law such that the question of federal law is now fundamentally different from the question of federal law as it was presented to the state court, you may need to go back to exhaust. And as I look at Graham v. Florida, that strikes me as a watershed change. And my instinct is to send it back. You may actually do better in state court than you do here. You may not want to fight this, by the way. I respectfully disagree for a couple of reasons. One is last week the United States Supreme Court decided Green v. Fisher. And in Green v. Fisher, they said that an unreasonable application of a United States Supreme Court law has to deal with a law that existed at the time of sentencing. On the other hand, it's very highly possible that Graham is retroactive. It is, but they said the retroactivity of Graham under Teague does not affect the 2254 analysis. Well, they said they didn't have to reach that question, didn't they, in the Graham case. They did. But in Green v. Fisher, they did reach it. And in Green v. Fisher, they said you have to look at it. We got a TBR yesterday from the Supreme Court on one of our cases in which they said is remanded in light of Green. So they've already applied that to the Ninth Circuit. But I really believe, and I've argued for the last 10 years, that under Thompson, Roper, and Adkins, this sentencing is unconstitutional because the trial court absolutely refused to look at the diminished culpability of these two categories of 14-year-olds. And we understand that. But we also, this case has also been affirmed by the court of appeals. And we're under the AEDPA. Right. And this is not, this is a sentence or a term of years. It doesn't say life without parole. It says 54 years to life. And the Attorney General and I. But we have been told by the Supreme Court that a term of years is not necessarily life without parole. You can look at actuarial tables and decide that it probably is. Right. But that doesn't make it legally a sentence of life without parole. I think what you have to do, rather than look at whether or not Mr. Bell is technically eligible for parole at the end of his expected life expectancy, is really the Eighth Amendment analysis requires the trial court at sentencing to factor in reduced culpability when you know the person's brain can't meet the same culpability as an adult. We understand. This case has all kinds of other issues in it. But we have a rather limited scope of review. I understand that. But even under 2254, I believe it is an unreasonable application of then-existing United States Supreme Court law. You do agree that 2003 is the period that we're dealing with, the sentence that was imposed? It was also reimposed in 2006, I believe, and then it was affirmed. Same sentence, yeah. It was actually less. The first sentence was 87 to life. And for purposes of this appeal, I goofed and got it reduced to 54 to life on direct appeal. But the ‑‑ But they're both before Graham. They're both before Graham, but they're post-Tompkins and they're post-Adkins. And both of those cases say very clearly that you have to ‑‑ we, as a civilized society, have to understand the role of impaired brains in criminal behavior. And we, as a civilized society, have to apply the advances in neuroscience to our criminal sentencing structure. And when you have someone who is this impaired and you have a trial court who absolutely refuses to look at either category of reduced culpability, you have an unreasonable application of United States Supreme Court law pre-Graham. I'd like to reserve time. Okay. Thank you. Good morning, Your Honors. May it please the Court, Deputy Attorney General Mary Sanchez on behalf of Respondent. And, Your Honors, I agree with the comments of Judge Fletcher that this is a case that is unexhausted. The claim needs to go back to the California courts. And, as a matter of fact, these very issues are pending now in the California Supreme Court in People v. Caballero. An exact same issue where there's a hundred and I believe the issue was 110 years to life. And the California Supreme Court is currently the... It doesn't quite sound like the same issue as 54 years to life. No actuarial table will allow that person to get out of prison. Well, that's correct. And that's another distinction with Graham versus this case. It was a 54 year to life. We know that in 2055, he has a parole hearing. He'll be an older gentleman. We're hoping that he'll have learned something during his time in prison. But he does have an opportunity to show that he has rehabilitated himself. Yeah. Well, but we've got a fair number. I can see why the California Supreme Court has taken that case. And it may take more than that one because, at least as I read Graham, it clearly applies to flat LWOPs. I mean, but it seems also to apply to de facto LWOPs. And that's how the California Courts of Appeal have construed it. Right. And the California courts may be in a better position than we are to decide under California sentencing practices and so on whether or not this sentence is a de facto LWOP. I mean, I have a fairly good sense of California sentencing and what that means and so on, but I'm very reluctant to decide that as an initial matter. What's your view on the question of waiver, whether or not Graham v. Florida is such a new federal holding that it requires, as it were, re-exhaustion or exhaustion of that point? You heard my question, so you understand, so you know where I'm coming from. Well, the language of Graham itself talks about this is such a new issue where for the first time they're deciding whether a LWOP sentence for non-homicide crimes committed by a juvenile falls outside the Eighth Amendment. And it states in that opinion, this is basically a new law. It's a sea change in the area of juvenile sentencing. As a matter of fact, when Graham came out, we were ordered to do supplemental briefing by the district court because the district court recognized that it significantly changed the landscape. You didn't then argue, however, that there was no exhaustion. I read your brief. You're correct. I did not. I had an express waiver in the first amended. No, you see, I'd stay away from the word waiver. I would read that as an express statement that as the law then stood, there had been exhaustion. I did not read that as a waiver. There has been exhaustion and I waive any exhaustion objection if the law changes. There was no such express waiver in those terms that you gave. I read the total language in your answer as to the exhaustion. You said it has been exhausted. You don't say I waive any objection to failure to exhaust. You say it has been exhausted. And at the time, the way that the law stood and the way the claim was framed, it had been. Yes, that's right. But then the law changed substantially. Right. So I don't think you waived. I think you said it has been exhausted as the law now stands. And I would agree with your interpretation. I thought you might. So I think we're in agreement that this is a case that could go back to the California Supreme Court in order to exhaust. And that would probably be, as you said, could be the best solution for Mr. Bell. He may do better. That is to say that we're bound by it, but they're obviously not. That's true. That's true. Have you talked with the other side about agreeing to have the case go back to California? Do you both agree on that? So far, not apparently. You know, she can file any sort of petition in the California Supreme Court raising the issue without discussing it with me. So that's something that's up to her. It's often useful for us if the parties can agree on a resolution. Well, granted. I was just curious. And if I was asked to answer by the California Supreme Court, I might very well express a non-opposition to, you know, whatever form of relief she was asking for. I'm not saying that I would, but depending on how she's framing the issue in the petition, I may well agree with what she is asking for. Well, and of course, I mean, California, as you know much better than we do, California's habeas stuff is odd in that she can start on the California Supreme Court, she can start in the Superior Court, you know, she can start wherever she wants. She can, and that will be her decision. So you keep saying California Supreme Court, but you don't limit it to that. Just file in the California courts. Well, no, typically a habeas petitioner will start in the Superior Court and work his or her way up. Right. But I thought you were in the California Supreme Court. It has to eventually wind up in the California Supreme Court, correct? At least it can. I got it. Okay. Unless there are any other comments or questions, I will submit. Okay. Ms. Fischer. Yes. As to filing yet another petition for review in the California Supreme Court, I filed three basically saying the same thing, and the courts denied each one of them. Were any of them post-Graham v. Florida? No. But under Green v. Fisher, Graham v. Florida doesn't apply. It doesn't apply. It doesn't apply to Mr. Bell. I've got to read Green carefully to see. So, I mean, that may affect how I decide this one, okay, or how we vote. And the other problem is that the issue of the helpability based on developmental disabilities isn't before the California Supreme Court. Right now, as far as I know, there are four published decisions dealing with Graham that are all before the California Supreme Court on review. One is from the second district, Caballero, finding that de facto LWOP was not cruel and unusual. There was another case, I can't remember the name of it, from the second district, and I think it began with an M, finding it was. Two cases from the fourth district finding that it was cruel and unusual. They're all before the court, but there's no, obviously there's no guarantee of any remedy for Mr. Bell. The other issue is, again, he is highly unlikely to live long enough to get out of prison. And last but not least, we talk about, yes, I can file another petition for review in the Supreme Court, but Mr. Bell doesn't have counsel there. I can do more unpaid work for Mr. Bell. It won't be the first time, let me tell you. But that's what we're back to. We're back to him being in pro per status. Mr. Bell can't function pro per. Even the district court appointed me because they couldn't make any heads or tails out of his petition. So we see that quite often in these cases. Mr. Bell is incredibly low-functioning. Obviously, it would be totally unreasonable to expect him to be able to handle his own case, either in Federal or State court. Right. And he has no counsel in State court. I submit. I just want to say one final thing, is that the trial court righteously declared what Mr. Bell did as barbaric, and it was. I've never seen a pretty rape, and I've seen lots. This is an ugly one. I'm not going to justify what he did. It was nasty. How's the matter? What is the measure of a civilized society in meeting a punishment? Do we simply do an eye for an eye? Do we simply chop off their head? Or do we look at the culpability of the offender? When I went to law school many months ago, I was taught that mens rea is just as important as actus rea, that this is the bedrock of our criminal jurisprudence. And I submit that the U.S. Supreme Court has recognized that pre-Graham. And the real problem with this sentence, the real problem, the violation of the Eighth Amendment, is that the trial court refused to do that, outright refused to do that. And that is why this is an unreasonable application of the United States Supreme Court law. Thank you. Thank both sides for your arguments. And maybe I shouldn't say it this way. Thank you for representing Mr. Bell. And I hope he'll be able to continue to do so. Bell v. Haw is now submitted for decision. Stern v. Sony Corporation has been submitted on the briefs.
judges: Goodwin, Fletcher, Rawlinson